### TRAVELERS INSURANCE CO. OF HARTFORD, CONN., v. WILLIAM W. BRIGHT.

INDEMNITY INSURANCE—LABORER DEFINED.

A man employed as a laborer by a "contracting carpenter" in constructing a building, is a laborer in the employ of such contractor within the meaning of an indemnity insurance policy held by the latter, although he is employed upon a hoisting apparatus leased and operated jointly by such "contracting carpenter" and another contractor, where it appears that he continues to receive his wages from his employer only, and that such a hoisting apparatus is a necessary and usual part of the business of a contracting carpenter.

HEARD ON ERROR.

Doyle & Lewis, for plaintiff in error.

A. L. Smith, D. L. Beall and Charles E. Longwell, for defendant in error.

HAYNES, J.

In this case a judgment was rendered in the court of common pleas, against the insurance company on certain matters set out in the petition. The controversy grew out of insurance which had been effected by Bright against loss on account of bodily injury to certain men who were in Bright's employ. The policies of insurance, in the main clause, provided as follows:

" The company does hereby agree to indemnify William W. Bright, of Toledo, county of Lucas, state of Ohio, (hereinafter called "the assured") for the period of twelve months, beginning on the fourth day of June, 1900, at noon, and ending on the fourth day of June, 1901, at noon, standard time, at the place where this policy has been countersigned, against loss from common law or statutory liability, for damages on account of bodily injuries, fatal or non-fatal, accidentally suffered within the period of this policy by any employe or employes of the assured while on duty at the places and in the occupations mentioned in said application, in and during the continuance of the work described in the said application; subject to the following agreements, which are to be construed as conditions."

Bright, in his petition, avers that having taken out this policy, he proceeded to do certain work in the city of Toledo, and while carrying forward that work, one of his men was killed; that an action was brought against him by the administrator; that upon said suit being brought he notified the Travelers Insurance Company, as required by the terms of the policy of insurance, of the fact, and required them

to defend ; that **they** replied that the loss did not come within the provi-
sions of the policy, that they were not liable and, therefore, did, not de-
fend.    Bright proceeded to make defense to the suit, and such proceed-
ings were had in the case that judgment was rendered against him for
he sum of $1,500, which was afterwards compromised for a less amount,
and thereupon he brought suit against the insurance company, to com-
pel them to pay the amount under the terms of their policy.

The insurance company answered to that petition, as they had an-
swered before, that the person who was killed was not working at the
time in a position that brought him within the terms of the policy ; in
short, that there was no liability on their part for the death of the party,
or to indemnify Bright for the damages which he had suffered by reason
of said death.

A reference is made in the policy to the application, which is made
a part of the policy and is the real basis of it.   It appears from the testi-
mony, that Bright had taken a contract to put up three additional stories
upon a large brick building at the corner of Summit and Adams streets
in this city, which formerly belonged to the Bronson estate and then
belonged to one of the Bronson heirs.   He took the contract for doing
the whole of the work, and then sublet the mason work to another
party and the roofing and steel work to another party, he himself retain-
ing and undertaking to do that which naturally came within the limits
of a carpenter's contract, and the painting and plastering.   He had al-
ready sublet the brickwork when his attention was called to the matter
of this insurance.   An agent of the insurance company called upon him
and the matter was discussed and resulted in an application being drawn
up by the agent at the time and signed by Bright, the application
being, of course, upon questions propounded by the agent and answers
made by Mr. Bright.   Still the matter that seemed to be in the minds of
the parties was that it was to insure against accident which might result
upon that building; nevertheless, the application was general in its
terms for the period of one year and to cover wherever the party should
have work to do in Ohio, and no mention is made, so far as we can dis-
cover, of the building in question.   Nevertheless, the policy was taken
out at that time with reference to that building and with some under-
standing as between the agent and the contractor of the work which was
there to be done.   The building was already a three-story one, and the
additional stories would carry it up to six or seven stories in height.
The application reads as follows:

"The undersigned hereby applies for a contractors' employers' lia-
bility policy based upon the following statements of fact which are war-
ranted to be true, and it is hereby agreed that if the applicant shall fail

to comply with the requirements of any statute, by-law, or ordinance respecting the safety of persons the policy shall not cover injuries resulting from such failure.

" Name of employer, William W. Bright.

"Address of employer, 2030 Adams street, Toledo, Lucas Co., Ohio.

" Trade or business is contracting carpenter, painter and plasterer."

The term " contracting carpenter," we understand to mean, taking contracts for carpenter's work or business. The point (,) that was made was after the word " carpenter."

" The occupations of employes, the average number in each occupation and estimated total annual wages by occupation are given in the following list:

### " THE EMPLOYES.

| Description of occupation. | Estimated average number. | Estimated total annual wages. | Place where work is to be done. | Remarks. These men do not work all the year. |
|---|---|---|---|---|
| Foreman......... | 2 | 500 each | Wherever | |
| Carpenters ..... | 12 | 450 each | I have | |
| Laborers......... | 2 | 300 each | work to do, | |
| Plasterers........ | 2 | $21 per wk. each | Ohio and ad- | |
| Painters ......... | 2 | 450 year each | joining states. | |
| Hod carriers... | 1 | 350 year each | | |

" The operations are those usual to the trade or kind of business described above, except as follows:

" None but the customary.

" No power is used, except as follows: Steam for hoist."

It further appears from the facts of the case, that at the time the contract was let for the brickwork there were some negotiations had between Hartman, who took that portion of the contract, and Bright in regard to the hoisting business, the taking up of the brick and the taking up of the necessary articles for the department that Bright was to carry forward, and there was some discussion whether Bright could get an engine, or whether the engine that Hartman had was sufficient or not, and this resulted in an arrangement between them whereby they rented an engine and hired an engineer, each to pay a man at the top to help manage matters up there, Bright owning the derrick or hoisting arrangement, and the tackle and ropes were bought with the expectation that Bright was to pay for them; but, as a matter of fact, Hartman took them, and paid for them, as he wanted to use them in another place. There was some question made as to whether that arrangement was all completed before this policy was completed and was understood by Mr. Hunker at that time; but Bright seems to have come to the conclusion

that it was finally concluded before the application was signed by him; it does not perhaps appear that Hunker understood or knew much about that part of it.

The parties went to work under those conditions. It turned out (and I suppose the jury found) that the hoisting works were insecurely fastened at the top of the building, and while they were carrying on the work the hoisting apparatus gave way, and in falling carried the party who was killed to the ground. Now it happened that the articles which were being carried up at the time the apparatus fell were brick which were to be used by Hartman. There was some claim that the box in which they were placed was overloaded—that the load was too heavy; and it was stated by Bright that they were at least of full weight and perhaps a trifle more; that there were not more brick in, but the brick had become water-soaked by rain, and perhaps had been sprinkled, but they weighed a little heavier and would weigh perhaps 1800 pounds and the average weight would be about 1600 to 1700 pounds.

There is no question but what Binecka, the man who was killed, was hired by Bright. He was a laborer in his employ and had been with him for some time, perhas a year, working in various departments of the business. When they went to work upon this building he was at work there but had not been connected with the work about the hoisting apparatus until perhaps the day that he was killed. At any rate, on that day the man who had been attending to that work failed to appear. The accident occurred on July 5. Mr. Bright, it seems, asked Binecka if he was willing to do that work, and he said he was willing, and undertook it.

Under this state of facts, the insurance company claim that they are not liable, for the reason that the party who was killed was not, at the time he was killed, engaged in a work that brought him within the terms of the policy of insurance; in other words, that he was not at that time a laborer working in that department, in the carpenter business, or plastering, or painting, but that in truth and in fact, if he were working for Hartman, he was working in the department of mason work.

The question involved in this case is one by no means free from difficulty, as we found in discussing it, and we simply have to discuss these contracts and the facts of the case and arrive at a conclusion, because we do not know that there are any cases likely to help us. In a case of this kind, where there is any doubt in regard to the terms of the contract we think they should be resolved rather in favor of the assured than to be strictly resolved against them. The question here is, whether within the terms of this contract, the policy of insurance should be held to cover the damage which has been sustained by reason of the

death of this man. Now, this man was hired by Bright; he was hired as a laborer—the testimony seemed to show that, without any variation. He was paid the wages of a laborer in the employ of Bright, and he continued to work there until on July 5, when he went to this place and was put to work on the hoisting apparatus, at the request of Bright and by his direction, and took his position there as the employe of Bright, and was, of course subject to his control. The work which was being carried on was, that they would raise some material for Hartman and some material for Bright, and so it went on alternately, as the demands of the work on the building called for. The man opposite to him and working on the other side was an employe of Hartman—sent there by Hartman and was paid by Hartman. It was claimed that by virtue of the arrangement between Hartman and Bright, they formed, as it were, a new partnership, and that this man, when he was there to work at this point, went into the employ, not of Bright alone, but into the employ of Bright & Hartman, and that he was carrying forward a more hazardous business. He was not carrying forward the carpenter business, nor the painting business, nor the plastering business, at least not exclusively, but he was doing more; he was doing that and at the same time carrying on the mason business in that he was raising brick for the use of the masons.

The case has been very fully and ably argued and many suggestions made in regard to the character assumed by this party in taking the position that he occupied in relation to the business and the work to be done, and it was argued that he was really an employe of a new firm, as we have stated, of Bright & Hartman ; that no matter if Bright paid him, that the moment he went to work in that way he became the employe, for the time being, of Bright & Hartman, and that in case anything occurred by reason of his negligence, Hartman would be liable as much as Bright. The question is difficult, and we are compelled to decide it upon a fair and liberal construction of the contract, having regard to how the work was being done and the object and purpose for which the contract was made. We think that in carrying on this work he was doing what was contemplated at the time this paper was signed—that is to say, the materials were being hoisted by the steam hoisting apparatus, and that the employes of Mr. Bright would be engaged in and about that business; it was a part of the work which was being carried on; it was within the carpenter work of Bright, at least, that all his material should be carried up and his plastering and carpenter work, by a hoisting apparatus of that kind. Now, did he forfeit his right to protection under the policy by the fact that under this arrangement which he had made for convenience and economy, that they were engaged in hoisting up some material also for Hartman and that they joined together in paying for

the running of the engine and in paying the engineer his wages? It seems to us not. It seems to us that this man was, while in this employ, fairly and justly within the terms of this policy issued to Bright, and that any accident that occurred in and about this work at that point and at the time and place where he was when he was killed was fairly and justly within the terms of the policy and is one that was within the fair contemplation of the parties to be covered at the time the contract was made.

We, therefore, hold that the judgment of the court of common pleas in this matter was correct; and the judgment of that court will be affirmed, but without penalty.